Case No. 22-2756, Balogun v. New York State Division of Human Rights. Good morning, your honors.  My name is Abib Balogun, the appellant I'm pointing below, and I'm representing myself in this matter. Your honor, this case stems from my employment with the Division of Human Rights. It started in April of 2018, and the circumstances and sequence of events that transpired consequently led to my termination. I filed a complaint with the Southern District of New York, and they granted the appellee's motion for summary judgment. And that's the reason why I'm here today. Your honor, the question raised in this appeal is whether the district court abuses discretion in finding summary judgment and declining to exercise supplemental jurisdiction over my state law claims. Your honor, it is clear that summary judgment is only applicable when there is no genuine issue of material fact or dispute. And it requires the court to construe the facts and make all plausible inferences in favor of the non-movement. I submit to you today that upon the novel review of the facts and circumstances in this case, that you will find that the court failed to abide by the summary judgment standard in its decisions. Your honor, the records and evidence clearly show that there are numerous issues of material facts in dispute. First of all, I would like to draw your attention to the Rule 56 statement in which district court claimed that its decision is based as well as the evidence in record. The Rule 56 statement of the 105 paragraph statements of undisputed fact made by the defendants in this case. 71 of them were clearly disputed. And the district court itself acknowledged that there are some facts at dispute which are material to the outcome. Specifically, they mentioned that I failed to meet the performance standard during my initial probation. That I was given, as to the number of cases that I was assigned and the number of cases that I completed during the initial probation. And as well as the number of cases that were assigned to my cooperators and the number of cases they submitted as well. Go ahead. Is there any, I'm sorry, I thought it was not disputed that you did not complete the number of cases that was expected within that first year. That's correct, it's not disputed, but I didn't dispute that. The dispute is that- You were assigned more cases than that. It was an impossible standard. I was assigned less than 108 cases and I provided evidence showing that I was assigned less than 108 cases. But yet, they still find it necessary to extend my probation based on that basis. And I also provided evidence- But then, I'm curious, wouldn't it be reasonable to extend the probation and then make sure that they gave you enough opportunity to meet the standard? In other words, they didn't fire you for not doing 108 cases. That's correct, your honor. And that was specifically what my supervisor said during the review. It was like, okay, you didn't complete 108 cases, which is required. But I wasn't assigned, I wasn't given an opportunity to complete 108 cases. So they said, if I could do extended probation within the first three months and show that I could complete, which is an average of nine cases a month, amounts to 27 cases, that they will retain me on that basis. And you did satisfy that standard for three months? I satisfied that standard, but they didn't retain me. I also provide- So can I ask this question? So you're saying that you're contesting the question of whether your performance was the way they describe it. Yes. But even if that's contested, is there evidence in the record that suggests that the reason that they are saying that you've had bad performance is because of race or sex or national origin? Yeah, the evidence here is the comparators, because I provided record of their respective 52 weeks probation period. And it shows that none of them completed 108 cases, but none of them were subjected to extended probation. And if you look up my probation report, you'll find- Didn't those cases, didn't they have better quarterly reviews? Sorry, I'm sorry. Didn't they do more cases overall, and didn't they have better quarterly reviews? It depends on how many cases they assigned to you. I don't have control over how many cases are assigned. But the fact remains that every case that was assigned to me, I completed all that could have possibly completed within that period of time. And the record shows that other investigators that didn't complete 108 cases, were not submitted to extended probation. And if you look at the report itself, there was absolutely no mention of unsatisfactory. There are 14 categories of pass or pass evaluation. And it's usually rated from excellent, very good, good, fair, and then unsatisfactory. In every category, there was no unsatisfactory rating. Everything was rated good or very good. So it seems as to me, if other people were not subjected to the same standard, that constitutes a desperate treatment in my opinion. So what I would like to point out with regards to the discrimination claim. I made two allegations, but the district court seems to be conflicting both. The two allegations, because one is the extension of probation, and the other one is termination. With the extension of probation, the issue presented was whether I satisfactorily completed the probation, or whether I presented inference of discrimination in the first and third step of the McDonough analysis. I submit that my report itself showed that I completed, I satisfactorily completed the international probation. And during the probation evaluation, my supervisors actually mentioned, which I provided record of them stating that they were satisfied with my work. That the only reason that they extended my probation is for failure to complete 108 cases. That is an impossible standard. That is, I was the only one that was subjected to that, as evidenced by the other comparator's probation report. Your Honor, I also presented letters that corroborated my complaint. It is said that after the grievance letter, the grievance letter I wrote after they extended my probation, which basically outlined how many cases I was assigned. I was assigned 106 cases specifically during that period. Of the 106 cases, 12 were reassigned, which they normally do sometimes, to other investigators. But in this case, I had already completed most of the investigative work on them, but they still took it away from me. So that took away 12 cases, 12 cases that I could have completed within that period. And 13 of the cases were recently assigned within the previous two weeks. Every investigation, they usually give us a minimum of 100 days. So there was no way I could have completed those 13 cases. The remaining 81 or 82 odd cases, I completed every one of them during that period. So that's why I challenged that in the first place, but it didn't apply. They still extended my probation. Thank you, Mr. Bellman. You've reserved a couple minutes for rebuttal. Thank you, sir. I'm here for the appellees. Good afternoon, I'm David Lawrence III, I'm an Assistant Solicitor General, appearing on behalf of the appellees. The district court correctly granted summary judgment to the defendant's appellees because it is undisputed that the individual defendants are not plaintiff's employers under Title VII, and because plaintiff failed to raise a material issue of fact on any of his claims against defendant State Division of Human Rights. As to the employment discrimination claim, plaintiff identified no evidence of discriminatory intent. In particular, none of his six reported comparators were similarly situated to him in all material aspects. As for the comparators who he claims- So there are some comparators who weren't going to complete 108 cases at the end of their probationary period, right? Well, we dispute that, but the district court- Doris Gonzalez, at her 52 week report, said she completed only 82 cases. So why is that a comparator? The district court correctly reasoned that the comparators are not similarly situated in that none of them had the persistent problems with writing of the reports, the quality of grammar and spelling that a plaintiff had, nor plaintiff's problems with insubordination. And as to two of his other comparators who received counseling for misconduct rather than being terminated, one of them was a permanent employee who was not similarly situated to plaintiff as a probationary employee, and the other engaged in very different misconduct, namely a sexually provocative gesture at a holiday dinner. So the reports are generally satisfactory, the reviews are generally satisfactory until the very last one. And then there's suddenly a number of unsatisfactory- Well, I respectfully disagree with that, Your Honor, that the- Well, I'm talking about the checkboxes, not the notice for now. The checkbox, yes, Your Honor. And I'm wondering what the explanation of that is. Well, the explanation is that you have to look at more than just the checkbox, you have to look at the narrative too, and the narratives repeatedly raise issues about the plaintiff's writing quality, about his insubordination, about his case production. There's also affidavits or some testimony that they had given him a good rating to encourage him, and they didn't really find it good. Is that right? That his supervisors would have filled out the evaluations. Was there not some testimony that they actually overrated his performance in those reviews? They stated in their declarations that they were trying to encourage him, that they wanted to retain him if he could meet the performance standards, and so they also- Those are all disputable issues of fact, though. I mean, maybe that's what they meant, and maybe it isn't. They checked a box that said good, and they said, well, we didn't really mean that. That's a plausible argument that could go- Well, that's why you have to go to the narratives that raise the other problems with plaintiff's performance. But isn't the basic argument that there's a dearth of evidence showing that any of this was pretext? I mean, in other words, the usual argument that employers make in these situations is that it's not enough to show that, or to persuade the court to disagree with the employer's evaluation of the performance or comparison of this employee with that employee. There needs to be some evidence that the mistake, if that's what it was, in deciding that this employee was inadequate, was a pretext for discrimination. Correct, Your Honor, and under the case law I cite in my brief, it's what the court looked to is what motivated the employer, and under the Delaney case that I cite, this court does not sit as a super personnel department to re-evaluate the employer's evaluation of the plaintiff's performance. The plaintiff raised an issue about he's saying it was impossible for him to complete the required number of cases. The record shows that the probationary employees, including plaintiff here, were given preference in case assignments, in number of cases they were assigned, that it was always established that they would have at least 20 cases open at one time. They could ask for more cases. If plaintiff had been completing the cases he was given on a timely basis, he would have been provided more cases in order to have those cases open at one time. Plaintiff also fails in his discrimination claim, and in all of his claims, because the record shows that his supervisors went to great lengths to encourage him. Plaintiff made secret recordings of his conversations with his supervisors, and in those recordings, the supervisors said, you know, we want to do anything we can to help you. It's important that you succeed. This is the very opposite of discriminatory animus. And it's also important in those recordings that plaintiff makes no statements indicating that he was being discriminated against based on any protected characteristic, namely his national origin, his sex, or his race, as he claims here. He first raised that after he was terminated, which is an important reason why his retaliation claim fails, and that he establishes no protected activity. As to the hostile work environment claim, plaintiff establishes no harassing conduct, much less conduct that was severe and pervasive. Moral conduct because of any protected characteristic. He raises claims that his job evaluations were incorrect, that his work was scrutinized too heavily under this court's case law. That's not sufficient. He disagrees that he should have been scolded for completing three so-called lack of jurisdiction cases, which were given to him in order to help bump up his case production. And these are the sort of things that are just common disagreements between an employer and employee that do not establish a hostile work environment. Unless the court has any further questions, I ask the court to affirm the judgment below. Thank you. Thank you. We'll hear rebuttal. Your Honor, I would like to point out that with respect to the issue about productivity and writing, I would like to point out that if you look at my initial probation report, all these categories were checked as very good. They were checked as very good, so it confuses me as to, is it the narratives that they wrote that takes precedence? Or is it the checkbook that actually says that if someone is unsatisfactory according to civil service rule, they should check that book, see if it's unsatisfactory. And if you further look into the report, you will see that there were a lot of positive comments about what I did. Advising me to work harder is just normal thing that your supervisor would tell you to encourage you to improve as an investigator. And nothing there shows that, no mention about any data entry issues there. And as a matter of fact, the issue with data entry and insubordination, I submit to you that they are false. If you look at the record, you will see that the only point when they make these allegations was at the point I was being terminated. Every other evaluation, I've had five evaluations before the last one. And they can't point to anything that happened between the fifth evaluation and the sixth evaluation that justified the drastic change in the evaluation of my character. They just threw everything in there. So the principal things you're relying on, just so we're clear, as evidence that this was pretextual, is the comparators who were, some of them were female, some of them were white, they were different ethnicities. And were not treated the same way. And the, we'll call it procedural irregularity of sort of suddenly changing all the evaluations at the last minute. Yes, sir. And the inconsistency in their statement. The inconsistency, yes. In the first place, if you take note, they first denied everything until evidence start coming out that this really happened.  So that is circumstantial evidence. That's the pretext. That there must have been a different reason than the ones that were given. Yes, your honor. Okay. Thank you. I just, can I just make one more point? Your honor, I'd like to conclude that a disputed fact cannot form the basis of granting summary judgments. And if this court review all the facts and evidence presented by both parties, this court will see that Petty did establish a primary trial case for his 37 claims. And I'm asking this court to revise the district court decision and remand the case for a fair jury trial. Thank you. Thank you. Thank you both. We'll take the case under advisement.